Argued and submitted October 13, 2015; judgment for defendant Apogee
reversed and remanded, otherwise affirmed November 16, 2016, petition for
review allowed June 1, 2017 (361 Or 524)

Dennis L. SLOAN,
Personal Representative, on behalf of
the Estate of Jack L. Sloan,
*Plaintiff-Appellant,*

*v.*

PROVIDENCE HEALTH SYSTEM-OREGON, et al.,
*Defendants,*

*and*

APOGEE MEDICAL GROUP, P.C.,
a corporation,
*Defendant-Respondent.*

Jackson County Circuit Court
094049L2; A152989

386 P3d 203

J. William Savage argued the cause for appellant. With him on the briefs was J. William Savage, P.C.

Michael T. Stone argued the cause and filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.*

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

**TOOKEY, J.**

Plaintiff brought this wrongful death action as personal representative of his father's estate, alleging that defendants Providence Health System-Oregon (Providence) and Apogee Medical Group, P.C. (Apogee) negligently caused the death of his father, Jack Sloan. Plaintiff appeals the judgment entered against him after the jury found Apogee negligent, but did not find Apogee's negligence to be the cause of Sloan's death.[1] Plaintiff argues that the trial court erred in failing to give two of plaintiff's requested jury instructions. Plaintiff also assigns error to the denial of his motion for a new trial. Because we conclude that the trial court erred in failing to provide one of the proposed instructions, we reverse and remand with respect to plaintiff's claim against Apogee.[2]

## I. STANDARD OF REVIEW
## AND STATEMENT OF FACTS

In reviewing whether the trial court erred in failing to give the requested instructions, we view the evidence in the light most favorable to the establishment of the facts necessary to require the giving of those instructions. *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 101 n 1, 957 P2d 147 (1998).

On November 3, 2007, at about 3:00 a.m., Sloan, then 85 years old, fell in his bathroom after having blacked out for a moment. Sloan took a cab to the emergency room of a hospital, owned and operated by Providence, to receive treatment. He explained to the medical personnel that he had fallen and was experiencing chest pain and pain in what the medical personnel described as Sloan's "right flank" area, on the right side of Sloan's back, below his rib cage and above his hip bone. The emergency room medical personnel determined that Sloan had atrial fibrillation and began treating that condition. An x-ray was taken of Sloan's

---

[1] The jury found that Providence was not negligent, and plaintiff does not challenge that part of the judgment.

[2] In light of our conclusion that the trial court erred in failing to give one of plaintiff's requested jury instruction and that that error requires remand for a new trial, we do not address plaintiff's assignment of error relating to the denial of his motion for a new trial.

chest with a portable x-ray machine, and both the radiologist and the emergency room doctor found no rib fractures on the x-ray image. However, at trial, plaintiff's medical experts testified that the portable x-ray image showed, albeit subtly, that Sloan had at least one, and maybe five, displaced rib fractures, as well as some fluid in his right chest cavity.

Sloan was admitted to the hospital and treated for atrial fibrillation, anemia, and risk of stroke by Doctors Jasti and Naoom, both of whom were hospitalists[3] employed by Apogee to work in Providence's hospital. Sloan's blood levels dropped significantly during his stay at the hospital, and the hospitalists treated the drop in Sloan's blood levels with a transfusion of two liters of blood, and performed an endoscopy and colonoscopy to determine the source of blood loss. The tests did not show the source of Sloan's blood loss, and the hospitalists ordered no further tests to determine the source of the problem.

Throughout Sloan's hospital stay, he complained of pain in his right flank area. Other than giving pain medication, the hospitalists did not diagnose or treat Sloan's complaint of pain. Sloan often needed oxygen for breathing, and nurses reported diminished sounds in both lobes of Sloan's lungs. Plaintiff's medical experts testified that Sloan's blood loss, complaints of "right flank" pain, his need for oxygen, and the nurses' reports of diminished sounds in the lobes of the lungs, all indicated that Sloan had rib fractures and bleeding in his chest cavity. The medical experts further testified that other diagnostic imaging equipment available at the hospital would have given the hospitalists a much sharper and more reliable image of Sloan's chest than the portable x-ray image taken in the emergency room. The hospitalists, however, did not order any further diagnostic imaging.

On November 7, the hospitalists discharged Sloan to a skilled nursing facility, Avamere Three Fountains (Three Fountains), where medical personnel understood from the hospital records that Sloan was at risk of syncope, or loss

---

[3] Jasti explained that hospitalists are in-house physicians at hospitals, who provide 24-hour care for patients.

of consciousness, was anemic with the cause unknown, had high blood pressure and atrial fibrillation, and was "generally deconditioned" from having been in a hospital bed for several days. Sloan remained at Three Fountains until November 19. He was able to breathe, supported, on and off, by two liters of oxygen per minute, until the morning of November 17, when Sloan's oxygen saturation levels decreased to 70 percent. By November 19, with the support of four liters of oxygen per minute, Sloan's oxygen saturation levels had declined to 58 percent and his breathing was shallow and irregular. Three Fountains sent Sloan to the emergency room for treatment.

A chest x-ray taken at the emergency room on November 19 indicated that Sloan had a hemothorax, which is an accumulation of blood in the lung cavity. The emergency room doctor drained approximately 1100 milliliters of bloody fluid from the lung cavity, and a second x-ray on that day showed that Sloan's right lung had collapsed from a hemothorax, that Sloan had three to five displaced rib fractures, and that at least two of those rib fractures had caused bleeding into the chest cavity. Sloan died shortly thereafter.

After an autopsy, the medical examiner determined that the cause of Sloan's death was "respiratory failure due to right hemothorax, which is blood in the chest cavity, and right lung collapse due to multiple rib fractures due to a domestic fall." Dr. Thorson, who treated Sloan on November 19 in the emergency room, testified at trial that the same rib fractures that existed on November 3 were likely the cause of the hemothorax on November 19.

At trial, plaintiff's theory of liability was that Sloan came to the hospital with rib fractures and bleeding in his chest cavity, which Providence's medical personnel and Apogee's hospitalists were negligent in failing to diagnose and treat, and that their failure caused Sloan's death. Pertinent to this appeal, plaintiff alleged in his fourth amended complaint that Apogee was negligent "in one or more" of the following particulars:

"(a)   In failing to ascertain the presence of multiple rib fractures;

"(b)   In failing to recommend or order or obtain additional imaging studies to adequately rule in or rule out the presence of multiple rib fractures;

"(c)   In failing to treat Mr. Sloan for multiple rib fractures;

"(d)   In failing to ascertain the likely source of blood loss during Mr. Sloan's hospitalization;

"(e)   In discharging Mr. Sloan without ascertaining the likely source of bleeding;

"(f)   In assuming that Mr. Sloan suffered only a bruise on his right flank from his fall."

Apogee's main theory of defense was that "something happened" to Sloan, beginning November 17, while Sloan was in Three Fountains' care. That unknown event, Apogee argued, caused Sloan's death. To support its theory, Apogee offered evidence that when Sloan left Apogee's care, Sloan had no displaced rib fractures and no bleeding in his chest cavity and that, upon arriving at Three Fountains, Sloan could breathe at normal rates without supplemental oxygen, had clear breath sounds in his lungs, had no cough or shortness of breath, and denied any chest pain. As evidence of a dramatic change, Apogee pointed to Sloan's reduced oxygen saturation levels starting on November 17 when Sloan was at Three Fountains, and the November 19 x-ray, showing that Sloan had three displaced fractures, two of which caused bleeding into the chest cavity.

Although Apogee acknowledged that no one knew what happened at Three Fountains, Apogee proffered evidence of certain possibilities. For example, with regard to the rib fractures, Apogee's medical expert, Kozak, testified, "I don't know what happened with the patient between, just in the course of breathing, rolling around, getting in and out of bed, I mean, there's lots of things that can cause fractures to displace." Apogee also introduced evidence that Sloan had complained of dizziness at Three Fountains, which made him a high fall risk, and that Three Fountains had listed Sloan as ambulatory "with standby assistance," meaning that someone was to stand by Sloan for assistance in case he started to fall. Nevertheless, Sloan had decided against

having side rails on his bed, and was found to have walked to the bathroom and sat on the side of his bed unassisted. Notations in Sloan's chart stated he "tended to move quickly" and was impulsive with "decreased safety awareness." A patient chart note of November 15 stated that Sloan was "willing and eager to work with therapy, wants more activity out of bed," but also noted that Sloan needed some assistance to get up in bed, and required "six minutes rest at edge of bed."

Another of Apogee's medical experts, Dobson, testified that, although he believed there were multiple rib fractures on November 3, those fractures were not displaced, meaning they were only cracked, and some had started to heal. Dobson explained:

> "And I think what happens is this man got up and he went to his physical therapy *** for example, he's eager to do that. At some point something happened. Something happened to cause *** [d]isplacement and disruption *** that hit the blood vessels and he bled sometime after the 15th. And he bled filling up two to two and a half liters of fluid in to his lungs.

> "And by the 17th it's absolutely manifested by the man for no other explainable reason, dropping his oxygen saturation, having respiratory shallowness, and rapid breathing."

At the end of testimony by the Three Fountains physician, Dr. Brummer, the court asked Brummer the following question on behalf of a juror: "Can an 85-year-old man suffer broken ribs if one or two assistants pulled or pushed or helped incorrectly to get him in or out of bed?" Brummer answered, "If people with osteoporosis, thin bones, I mean, really thin bones, are lifted, even appropriately lifted, bones can spontaneously break. So, the answer to your question is yes."

In closing arguments, Apogee's counsel argued:

> "So, the question then is what happened? How did this all come to pass under these particular circumstances? And I blame no one, quite frankly. But, he did go to the Three Fountains nursing facility. He was there. *** [Y]ou'll have the records with you to essentially see the gradual, but slow improvement and his level of activity and

that sort of thing. And you'll see that suddenly something happened. *** [S]omething new and different just happened under—under the circumstances at that time."

As relevant on appeal, plaintiff requested two instructions be given to the jury. The first, entitled "LIABILITY FOR SUBSEQUENT CONDUCT OF THIRD PARTY" (Conduct of Third Party Instruction), provided:

"If you find the defendant was negligent and that such negligence caused injury to the plaintiff, the defendant would also be liable for any additional injury caused by the subsequent conduct of another person or entity, even if such conduct was negligent or wrongful, as long as the subsequent conduct and risk of additional injury were reasonably foreseeable."

The second requested instruction, entitled "LIABILITY FOR SUBSEQUENT CONDUCT OF ANOTHER" (Conduct of Three Fountains Instruction), provided:

"If you find that [Apogee] was negligent and caused injury to decedent Jack Sloan, then [Apogee] is liable to plaintiff not only for those injuries, but is also liable for any additional injuries, including death, caused by [Three Fountains], even if the treatment provided by [Three Fountains] was negligent."

Plaintiff argued that those instructions were necessary, because Apogee had presented a theory that "the actionable event" causing Sloan's death occurred when Sloan was in the care of Three Fountains, suggesting that things were getting worse at Three Fountains and that somebody at Three Fountains "implicitly dropped the ball[.]" The requested jury instructions, plaintiff argued, indicated that Apogee could still be liable for Sloan's death, even if it was caused by Three Fountains' conduct.[4] Apogee responded that it was "not blaming anyone at Three Fountains." It further argued:

"I think that what we have is what historically has been thought of as intervening superseding cause. And if that's

---

[4] Apogee argues that plaintiff did not preserve the assignments of error pertaining to the two jury instructions, because plaintiff failed to except to the trial court's failure to give the requested instructions as required by ORCP 59 H. We reject that argument without further discussion.

the kind of instruction that needs to be given then so be it. But, I don't think that the skilled nursing facility was treating anything that we caused or that we were responsible for.

"And I don't—I don't think it's a liability for a third-person in misconduct so much as it is a causation issue of a sequence of events that took place."

The trial court refused to give either instruction. Instead, the trial court gave the following instructions pertinent to this appeal:

"The law assumes that all persons have obeyed the law and have been free from negligence. To recover the plaintiff must prove two things by a preponderance of the evidence. One, that the defendants were negligent in at least one of the ways claimed in the plaintiff's complaint. And, two, that the defendants' negligence was a cause of damage to the plaintiff.

"* * * * *

"A person is liable only for the reasonably foreseeable consequences of his or her actions.

"There are two things that must be foreseeable. First, the plaintiff must be within the general class of persons that one reasonably would anticipate might be threatened by the defendant's conduct. Second, the harm suffered must be within the general class of harms that one reasonably would anticipate might result from the defendant's conduct.

"A cause is defined as an act or omission that is a substantial factor in bringing about the harm. A substantial factor is an important or material factor and not one that is insignificant.

"Many factors or things may operate either independently or together to cause harm. In such a case each may be a cause of the harm, even though the others by themselves would have been sufficient to cause the same harm.

"If you find that the defendant's act or omission was a substantial factor in causing the harm to the plaintiff you may find that the defendant's conduct caused the harm, even though it was not the only cause.

"When there are two or more possible causes for an injury for one or more of which a defendant is not responsible there can be no recovery, unless it is shown that as between the causes in question the cause for which a defendant is responsible is the more probable.

"If the evidence leaves it as probable that the injury was a result of one cause as much as another, then the plaintiff cannot recover from that defendant."

The jury found that Providence was not negligent. It found that Apogee's conduct was negligent, but not the cause of Sloan's death. After the jury's verdict, plaintiff moved for a new trial, arguing that the trial court erred in failing to include the Conduct of Third Party Instruction and the Conduct of Three Fountains Instruction in the jury instructions. Plaintiff argued that, without the requested instructions, the jury misunderstood the law regarding causation and, as a result, the jury found Apogee's conduct was negligent, but not the cause of Sloan's death. The trial court denied the motion. On appeal, plaintiff assigns error to the court's failure to provide those instructions and to the subsequent denial of his motion for a new trial.

## II. ANALYSIS OF PROPOSED JURY INSTRUCTIONS

"A party is entitled to jury instructions consistent with her theory of the case, provided that the instructions (1) correctly state the law; (2) are based on the current pleadings; and (3) are supported by evidence." *Crismon v. Parks*, 238 Or App 312, 314, 241 P3d 1200 (2010) (citing *Hernandez*, 327 Or at 106) (other citations omitted). A trial court's error in failing to give a requested jury instruction does not require reversal unless the error "substantially affect[ed] the rights" of the party requesting the instruction. ORS 19.415(2).

We agree with plaintiff that Apogee suggested to the jury that Three Fountains was responsible for Sloan's death and that Apogee offered evidence to support that theory. Consequently, we understand plaintiff's theory to be that if the jury were to find that Three Fountains caused Sloan's death, Apogee could still be liable if (1) Apogee's negligence caused Sloan to be discharged in a weakened and

fragile state, with undiagnosed and untreated rib fractures and internal bleeding;[5] and (2) Three Fountains caused the rib fractures to become further displaced, thereby causing Sloan's death, or Three Fountains failed to act when Sloan's condition from the rib fractures and internal bleeding worsened, thereby causing Sloan's death.

## A.  *Correct Statement of the Law*

Whether a defendant can be liable for injury caused by the conduct of a third party involves two issues. First, a plaintiff must establish that defendant's negligence was a cause in fact of the alleged injury. *See Towe v. Sacagawea, Inc.*, 357 Or 74, 87, 346 P3d 1207 (2015) (plaintiff must prove, as an element of a negligence claim, "cause in fact"). Second, where the issue is a defendant's liability for injury caused by a third party, case law includes a consideration of the "reasonable foreseeability" of the injury caused by the third party. *See generally Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 11-22, 734 P2d 1326 (1987) (discussing role of foreseeability in negligence determinations); *see also Piazza v. Kellim*, 360 Or 58, 81, 377 P3d 492 (2016) (in discussing a defendant's liability for a third party's criminal acts, stating "a trier of fact must be able to find from concrete facts that a reasonable person in the position of the defendant reasonably would have foreseen that the person or location and circumstances posed a risk of criminal harm to persons such as the plaintiff"); *Buchler v. Oregon Corrections Div.*, 316 Or 499, 516, 853 P2d 798 (1993) (concluding that the defendant was not liable for the plaintiff's injury, "because it was not reasonably foreseeable that [the third party] posed a risk of harm to persons in plaintiffs' position"); *Becker v. Barbur Blvd. Equipment Rentals, Inc.*, 81 Or App 648, 652-53, 726 P2d 967 (1986), *adh'd to as modified on recons*, 84 Or App 367, 733 P2d 900, *rev den*, 303 Or 535 (1987) (concluding that the "defendants ought reasonably to have foreseen" that, through their negligence, the plaintiff could be injured by a third party).

---

[5] *See Horn v. National Hospital Association*, 169 Or 654, 670, 131 P2d 455 (1942) (in a failure to diagnose case, the plaintiff must prove "that the absence of medical or surgical treatment at that time resulted in damage which would not have occurred if the treatment had been administered").

The principle of "foreseeability" is part of any negligence claim.[6] *See Lasley v. Combined Transport, Inc.*, 351 Or 1, 7, 261 P3d 1215 (2011) ("When a defendant's negligence is a factual cause of harm to the plaintiff, the defendant is subject to liability to the plaintiff as long as the harm that the plaintiff suffered was a reasonably foreseeable result of the defendant's negligence."); *see also Towe*, 357 Or at 87 ("Conceptually, foreseeability and causation are separate elements."); *see also Horton v. OHSU*, 277 Or App 821, 823, 373 P3d 1158 (2016) ("On the pleaded facts, a reasonable factfinder could determine that the harms to plaintiffs were among the foreseeable risks of defendants' negligent surgery * * * and, further, that the negligent surgery was a cause in fact of plaintiffs' harm."). "'Foreseeability' acts as a limitation on liability and reflects societal judgment regarding the extent to which a defendant can be considered to be at fault for a plaintiff's harm." *Horton*, 277 Or App at 832. In sum, because a third party was involved in this case, a resolution of the question of whether Apogee "caused" Sloan's death requires evidence of the cause-in-fact of the injury, as well as evidence of the reasonable forseeability of the injury.

Plaintiff's Conduct of Three Fountains Instruction was incorrect, because it failed to explain that additional injuries caused by Three Fountains must be reasonably foreseeable injuries of Apogee's negligence. It was, therefore, not a correct statement of the law, because it was not complete and accurate in all respects. *See Purdy v. Deere and Company*, 281 Or App 407, 419, 386 P3d 2 (2016) ("A jury instruction must be both (1) complete and (2) accurate."). The trial court did not err in failing to give the Conduct of Three Fountains Instruction.

---

[6] Apogee argues that, because this case pertains to a physician's "special duty" to a patient, "foreseeability principles" do not apply. We disagree. Case law related to negligence provides that the reasonable foreseeability of harm is a factor in determining the scope of a defendant's liability. *See generally Fazzolari*, 303 Or at 17 (explaining how the reasonable foreseeability of a harm plays role in determining liability). Reasonable foreseeability operates as a "legal limit on the scope of a defendant's liability for negligent conduct." *Piazza*, 360 Or at 70; *see also Rhodes v. U.S. West Coast Taekwondo Assn., Inc.*, 273 Or App 670, 678, 359 P3d 1196 (2015), *rev den*, 358 Or 833 (2016) ("[W]here a status or a special relationship is implicated that creates a basis for the defendant's duty, the scope of that particular duty may be defined or limited by common-law principles such as foreseeability.") (citation omitted; internal quotation marks omitted; brackets omitted).

We reach a different conclusion with respect to plaintiff's Conduct of Third Party Instruction. The Conduct of Third Party Instruction speaks to both cause-in-fact and foreseeability. The instruction states that if the defendant negligently caused injury to the plaintiff, the defendant is liable for "any additional injury" caused by the "subsequent conduct" of a third party, if such harm-producing conduct and risk of additional injury was "reasonably foreseeable." Although the requested instruction does not specifically state that the "additional injury" must be the consequence of the defendant's negligence, by describing the injury and conduct as "additional injury" and "subsequent conduct," the instruction can be understood to connect the first injury (fractured ribs and internal bleeding) to the second injury (Sloan's death) and the defendant's conduct to the third party's conduct. An "additional injury" is an injury added to the original injury, and "subsequent conduct" connotes conduct occurring in conjunction with previous conduct. The Conduct of Third Party Instruction, therefore, indicates that a causal relationship must exist between Apogee's negligence and Sloan's death. Furthermore, the Conduct of Third Party Instruction was supported by the other jury instructions on causation, which instructed the jury that, in order for Apogee to be liable for Sloan's death, Apogee's act or omission must have been a "substantial factor" in causing Sloan's death.[7] The requested instruction also addressed foreseeability, and correctly limited Apogee's liability to injury from third party conduct that was reasonably foreseeable.

Apogee remonstrates that the Conduct of Third Party Instruction is not correct in all aspects, because it does not follow the holding of *Martin v. Bohrer*, 84 Or App 7, 733 P2d 68 (1987), *aff'd*, 307 Or 144, 764 P2d 550 (1988). In *Martin*, the plaintiff sued the defendant for injuries sustained in a car accident. As part of discovery by the defendant, the plaintiff was examined by an independent medical examiner who, during the examination, allegedly injured the plaintiff's knee, which had not been injured in the

---

[7] We note that the trial court instructed the jury that a defendant's act or omission must have been a "substantial factor in bringing about the harm." The "substantial factor" test is a test of "cause in fact." *See Lasley v. Combined Transport, Inc*, 351 Or 1, 7, 261 P3d 1215 (2011) (explaining the same).

accident itself. 84 Or App at 9. In his complaint, the plaintiff alleged that the defendant was responsible for the knee injury. *Id.* The trial court struck the allegation, because the knee injury "was not sufficiently related to the original accident for defendant to be responsible for it." *Id.*

The plaintiff in *Martin* argued that the trial court erred in striking the allegation, because, among other points, "an original tortfeasor may be held liable for *all* injuries which the victim suffers in the course of medical procedures undergone as a result of the original tort, rather than just those which arise out of the treatment of injuries caused by the tort." *Id.* (emphasis in original). The plaintiff's argument was based on a previous Supreme Court case, *Woosley v. Dunning*, 268 Or 233, 520 P2d 340 (1974), in which the decedent and the defendant were in an automobile accident, and, in the course of undergoing medical tests from a neurosurgeon for vision problems allegedly caused by a head injury sustained in the automobile accident, the decedent suffered a brain stem hemorrhage and died. *Id.* at 237-38. The doctor who performed the medical tests testified at trial that the decedent's vision problems were "due to the head injury" and that "there was a relationship between the [medical] tests [pertaining to the vision problems] and [the plaintiff's] death." *Id.* at 238. The court concluded that the plaintiff "offered sufficient evidence to make the question of causation a jury question," and stated:

> "It has been previously held by this court, as well as by other courts, that one who negligently injures another person is liable for damages not only for the original injury, but also for all additional injury caused by a physician's treatment, even if negligent, so long as the treatment was provided in good faith effort to diagnose, cure or alleviate the original injury."

*Id.* at 251 (citations omitted).

From that statement in *Woosley*, the plaintiff in *Martin* contended that the defendant's liability was not limited to injuries arising from the medical treatment of the injury caused by the original tortfeasor. Rather, the defendant's liability included any injuries arising during the course of medical treatment provided as a result of

the original injury. *Martin*, 84 Or App at 9. We disagreed with that broad interpretation of *Woosley*, noting that the Supreme Court in *Woosley* had limited the tortfeasor's liability to additional injury suffered from medical treatment that was "'provided in good faith effort to diagnose, cure or alleviate the *original injury.*'" *Id.* at 11 (quoting *Woosley*, 268 Or at 251) (emphasis added in *Martin*). We held that "the better policy is a *per se* rule that the original tortfeasor's liability extends only to injuries that result from professional procedures directed at an injury which was caused or could have been understood by the physician to have been caused by the original injurious event." *Id.* at 12. Applying that law to the plaintiff's allegation, we concluded that the allegation was "sufficient to permit plaintiff to attempt to prove that the knee injury resulted from the physician's attempts to diagnose, treat or evaluate the injuries which he sustained in the accident." *Id.* at 13.

Apogee contends that *Martin*'s holding limits Apogee's liability to "subsequent harm [that arose] as a result of professional procedures undertaken by the subsequent care provider * * * that were directed at an injury that [Three Fountains] understood to have been caused or could have been caused by the 'original injurious event' allegedly caused by Apogee." We disagree. Both *Woosley* and *Martin* stand for the principle that a defendant may be liable for injuries caused by a third party if the defendant's negligence was a "cause in fact" of the injury and the third party's conduct and the injury were reasonably foreseeable consequences of the defendant's negligence. In *Woosley*, the court concluded that there was evidence from which a jury could find a causal relationship between the automobile accident and the decedent's death. 268 Or at 252. Additionally, although the holding in *Woosley* does not speak in terms of the reasonable foreseeability of the subsequent treatment that caused the additional injury, it limits liability to subsequent conduct and injury that, under the principles set forth in *Fazzolari*, we would now call "reasonably foreseeable" subsequent conduct and injury. Likewise, in *Martin*, we concluded that the allegations supported a causal connection between the automobile accident and the knee injury caused by the physician, and we limited liability consistent with case law that

limits liability to the reasonably foreseeable consequences of a tortfeasor's negligence. We conclude that the Conduct of Third Party Instruction is consistent with those holdings and with other aforementioned case law pertaining to causation, and therefore, the instruction correctly stated the law applicable to plaintiff's theory of the case.

### B. *Based on Current Pleadings*

Apogee contends that the trial court did not err in refusing to give the instruction, because the fourth amended complaint does not support the instruction. Apogee argues that plaintiff did not allege "that Apogee caused a specific injury to [Sloan] and that [Sloan] later suffered additional injury caused by the conduct of Three Fountains." Although Apogee is correct that plaintiff's pleadings do not allege that Sloan suffered additional injury caused by Three Fountains, "pleadings are the written statements by the parties of the facts constituting their respective claims and *defenses*." ORCP 13 A (emphasis added). "[A] pleading for all practical and legal purposes is automatically amended whenever an issue not raised by the pleading is tried by consent." *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 355, 788 P2d 428 (1990), *overruled on other grounds Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 61 P3d 928 (2003) (footnotes omitted). As alleged by plaintiff, Sloan suffered multiple rib fractures and internal bleeding from his fall, which Apogee negligently failed to diagnose and treat. The parties subsequently tried by consent Apogee's defense that "something happened" to Sloan at Three Fountains, which caused displaced rib fractures, causing bleeding into Sloan's chest cavity, which then resulted in Sloan's death. There was evidence from which one could infer that Sloan was in a weakened condition when he left the hospital, due to his undiagnosed and untreated rib fractures and the bleeding into the chest cavity, and that the already present rib fractures either became further displaced, causing Sloan's death, or the already present rib fractures and bleeding continued to worsen on their own, thereby causing Sloan's death. There was also evidence that "something happened" at Three Fountains that worsened the already present rib fractures, or that Three Fountains failed to act soon enough when the rib fractures and internal bleeding worsened. Consequently,

the pleadings supported the theory that Apogee caused an injury to Sloan at the time Sloan left the hospital, and supported the theory that Sloan suffered "additional injury" at Three Fountains.

## C. *Supported by the Evidence*

Next, we consider whether the Conduct of Third Party Instruction was supported by the evidence. Considering the facts in the light most favorable to plaintiff's requested instruction, we conclude that it was. There was evidence from which the jury could find that Apogee was negligent in caring for Sloan and, as a result, failed to diagnose and treat Sloan's rib fractures, causing Sloan to leave the hospital in a weakened and fragile state with undiagnosed and untreated rib fractures and bleeding into his right chest cavity. There was evidence presented at trial that the same rib fractures that existed on November 3 were likely the cause of the hemothorax on November 19. There was evidence from which the jury could infer that something happened at Three Fountains that further injured Sloan's ribs, thereby causing Sloan's death, or that, had Three Fountains taken Sloan to the emergency room sooner, he would not have died. There was evidence, therefore, of a causal connection between Apogee's conduct and Sloan's death, as well as evidence that Sloan's death was a reasonably foreseeable consequence of Apogee's negligence. That evidence supported the Conduct of Third Party Instruction. We therefore conclude that the trial court erred in failing to give plaintiff's Conduct of Third Party instruction.

## D. *Denial Substantially Affected Plaintiff's Rights*

The trial court's error does not require reversal unless the error "substantially affect[ed] the rights" of plaintiff. ORS 19.415(2). "In the context of instructional error, that standard will generally be met if, 'when the instructions are considered as a whole in light of the evidence and the parties' theories of the case at trial[,] there is some likelihood that the jury reached a legally erroneous result[.]'" *Dosanjh v. Namaste Indian Restaurant, LLC*, 272 Or App 87, 92, 353 P3d 1243 (2015) (quoting *Purdy v. Deere and Company*, 355 Or 204, 232, 324 P3d 455 (2014)); *see*

*also Purdy*, 281 Or App at 430 ("If there is 'little likelihood' that an error affected the verdict, we may not reverse; if there is some likelihood or a significant likelihood that the error influenced the jury's verdict, we must reverse."). We conclude that that test has been met in this case.

The Conduct of Third Party Instruction was necessary to avoid jury confusion in light of the evidence offered at trial and the parties' competing theories of the case. Plaintiff's theory was that Apogee's failure to diagnose and treat the rib fractures and the bleeding into the right chest cavity caused Sloan's death. Apogee's main defense was that the cause of Sloan's death was the care of a third party, Three Fountains, and, therefore, Apogee was not liable for Sloan's death. Given those theories, we believe that the jury may have inaccurately understood that, if Sloan's death was "caused" by Three Fountains, plaintiff could not recover from Apogee. *See Purdy*, 355 Or at 225-27 (explaining circumstances under which the refusal to give a requested instruction may "substantially affect" the rights of the party requesting the instruction). Furthermore, even though the jury was given general instructions pertaining to causation and foreseeability, the jury may have concluded that those instructions did not apply to Apogee if Three Fountains caused Sloan's death. Plaintiff's Conduct of Third Party Instruction fully covered what the general instructions on causation and foreseeability did not cover; it explained how Apogee could be liable for Sloan's death even if Three Fountains caused Sloan's death. *See Hernandez*, 327 Or at 106 (no error in trial court's refusal to give a requested instruction if the requested instruction, though correct, "was covered fully by other jury instructions given by the trial court"). The requested instruction would have explained to the jury that Apogee could be liable for injury caused by Three Fountains' conduct, if Apogee's negligence was a "cause in fact" of Sloan's death and if Sloan's death, because of the conduct of Three Fountains, was a reasonably foreseeable consequence of Apogee's negligence. We therefore conclude that the failure to give the Conduct of Third Party Instruction "substantially affect[ed]" plaintiff's rights and that the trial court's refusal to give the instruction requires reversal.

As a final matter, we address plaintiff's request that a remand be limited to the issues of causation and damages. A "new trial in a personal-injury case ordinarily should be a new trial on all contested factual issues, regardless of the ability of the parties on appeal to pinpoint error so as to show that the error, if any, may have affected only one issue." *Maxwell v. Port. Terminal RR. Co.*, 253 Or 573, 577, 456 P2d 484 (1969). The court in *Maxwell* explained that there are exceptions to that rule:

> "There will, of course, be exceptional cases in which the trial court, in the exercise of judicial discretion, properly will limit the issues for a new trial. But the standard to be applied in the exercise of this discretion is reasonable certainty that the issue or issues to be eliminated from the second trial are no longer viable issues in the case and that their removal will not prejudice the right of either party to the kind of jury trial to which he would have been entitled but for the error or errors necessitating the new trial."

*Id.*

We do not believe that this is an exceptional case for which the trial court has discretion to limit the retrial to the issues of causation and damages. The instructional error could have affected the jury's understanding of various issues concerning the case. *See Wilson v. B. F. Goodrich*, 52 Or App 139, 152, 627 P2d 1280 (1981), *aff'd*, 292 Or 626, 642 P2d 644 (1982) (concluding that both liability and damages must be retried on remand of a personal injury claim, "since the jury will hear evidence relevant to liability, [and] there is a significant possibility of prejudice to the defendant on the damages question if the jury is aware that that evidence has already been determined to establish liability"). We therefore conclude that, on remand, retrial is not limited in the way that plaintiff requests.

Judgment for defendant Apogee reversed and remanded; otherwise affirmed.