DUNCAN, J.
**637 In this medical negligence action, plaintiff appealed, asserting that the trial court erred in refusing to give his requested jury instruction concerning a tortfeasor's liability for the subsequent conduct of another. The Court of Appeals agreed and reversed the trial court's judgment in part and remanded the case to the trial court for a new trial. Sloan v. Providence Health System-Oregon , 282 Or. App. 301, 386 P.3d 203 (2016). On defendant's petition, we allowed review, and, for the reasons explained below, we affirm the Court of Appeals decision, reverse the trial court's judgment in part, and remand the case for a new trial.
I. HISTORICAL AND PROCEDURAL FACTS
Acting as the personal representative of his father's estate, plaintiff brought this medical negligence action against defendants Providence and Apogee. Plaintiff asserted that defendants were negligent in their care of plaintiff's father, Sloan, because they failed to diagnose and treat Sloan's rib fractures and internal bleeding. On November 3, Sloan, who was 85 years old, came to Providence's hospital after falling at home and was initially treated by Providence's emergency department personnel. He was later admitted to the hospital, where he was treated by Apogee's doctors. On November 7, Apogee's doctors discharged Sloan to a skilled nursing facility, Three Fountains. On November 17, Sloan's condition worsened significantly. His blood oxygen saturation levels dropped and his breathing became rapid and shallow. A nurse practitioner at Three Fountains believed that something was happening with Sloan's lungs and suspected he might have pneumonia. Sloan's condition continued to worsen over the next two days, and, on November 19, Three Fountains returned Sloan to the hospital. At the hospital, Sloan was found to have multiple displaced rib fractures and bleeding in his right chest cavity, which had caused his right lung to collapse. Later that same day, Sloan died of respiratory failure due to the bleeding in his chest cavity and the collapse of his lung.
Thereafter, plaintiff brought this medical negligence action against defendants. At trial, plaintiff's theory was that, when Sloan first came to the hospital, he had **638 fractured ribs that were causing bleeding into his chest cavity and that Providence and Apogee's doctors failed to diagnose and treat those problems, which continued and eventually led to Sloan's death. Plaintiff did not make any claims against Three Fountains.
Providence and Apogee did not dispute the medical cause of Sloan's death, but they did dispute that Sloan had displaced fractured ribs and internal bleeding during his first stay at the hospital. They suggested that "something happened" while Sloan was at Three Fountains that caused Sloan's death. Providence and Apogee did not identity a particular cause and did not assert that Three Fountains was negligent. But they presented evidence suggesting that Sloan's ribs could have fractured-or, if any of them were already fractured, the fractures could have been displaced-by Sloan's own movements while at Three Fountains or by actions *1100 or omissions by Three Fountains. In support of that theory, Providence and Apogee presented testimony from medical experts. One expert testified that rib fractures can be displaced "just in the course of breathing, rolling around, getting in and out of bed." Another suggested that Sloan's rib fractures could have been displaced during physical therapy at Three Fountains. Providence and Apogee also presented evidence that, although Three Fountains knew that Sloan was a high fall risk, Sloan was not always assisted when walking. In addition, the nurse practitioner from Three Fountains testified that no one at Three Fountains was aware that Sloan had fractured ribs, but that she would want to know if a patient had fractured ribs because that patient would be at risk of bleeding into his chest cavity or puncturing a lung.
Because Providence and Apogee's theory raised the possibility that Sloan's death was caused by something that happened at Three Fountains, plaintiff requested a jury instruction regarding a tortfeasor's liability for the subsequent conduct of a third party (the Liability for Subsequent Conduct Instruction). Similar to Uniform Civil Jury Instruction 20.07, plaintiff's requested instruction stated:
"If you find the defendant was negligent and that such negligence caused injury to the plaintiff, the defendant **639 would also be liable for any additional injury caused by the subsequent conduct of another person or entity, even if such conduct was negligent or wrongful, as long as the subsequent conduct and risk of additional injury were reasonably foreseeable."[1]
Plaintiff argued that, because defendants were implying that Three Fountains caused Sloan's death, the jury needed to know that, if Providence and Apogee were negligent, they could be liable for Sloan's death, even if Three Fountains' subsequent conduct contributed to the death.
Defendants objected to the instruction. Defense counsel read the instruction as applicable only if defendants were asserting that Three Fountains was negligent, and he asserted that defendants were "not contending that anybody dropped the ball, necessarily." Defense counsel commented, "I think that what we have is what historically has been thought of as [an] intervening superseding cause. And if that's the kind of instruction that needs to be given then so be it."
The trial court refused to give plaintiff's Liability for Subsequent Conduct Instruction.[2] Plaintiff expressly excepted to the trial court's refusal to give the instruction, asserting that he was entitled to it
"because of the suggestions by [defense counsel] and argument that something that happened over at the Three Fountains home is responsible for the death of Mr. Sloan as opposed to the acts of negligence that are set forth in Plaintiff's *** complaint."
**640 As relevant to the issues on review, the trial court instructed the jury on negligence, reasonable foreseeability, causation, multiple causation, and two or more possible causes, stating:
"The law assumes that all persons have obeyed the law and have been free from negligence.
"To recover, the plaintiff must prove two things by a preponderance of the evidence: (1) that the defendants were negligent in at least one of the ways claimed in the plaintiff's complaint; and (2) that the defendants' negligence was a cause of damage to the plaintiff.
"* * * * *
*1101 "A person is liable only for the reasonably foreseeable consequences of his or her actions. There are two things that must be foreseeable. First, the plaintiff must be within the general class of persons that one reasonably would anticipate might be threatened by the defendant's conduct. Second, the harm suffered must be within the general class of harms that one reasonably would anticipate might result from the defendant's conduct.
"A cause is defined as an act or omission that is a substantial factor in bringing about the harm. A substantial factor is an important or material factor and not one that is insignificant.
"Many factors or things may operate either independently or together to cause harm. In such a case, each may be a cause of the harm even though the others by themselves would have been sufficient to cause the same harm. If you find that the defendant's act or omission was a substantial factor in causing the harm to the plaintiff, you may find that the defendant's conduct caused the harm even though it was not the only cause.
"Where there are two or more possible causes for an injury for one or more of which a defendant is not responsible, there can be no recovery unless it is shown that as between the causes in question, the cause for which a defendant is responsible is the more probable.
"If the evidence leaves it as probable that the injury was a result of one cause as much as another, then the plaintiff cannot recover from that defendant."
**641 The jury found that Providence was not negligent. It found that Apogee was negligent, but not the cause of Sloan's death. After the verdict, plaintiff moved for a new trial, asserting, among other things, that the trial court had erred by refusing to give the Liability for Subsequent Conduct Instruction. The trial court denied the motion, and plaintiff appealed.
On appeal, plaintiff assigned error to the trial court's refusal to give the instruction and its denial of his motion for a new trial. The Court of Appeals concluded that the instruction was a correct statement of the law, was supported by the evidence, and, in light of the parties' competing theories of the case, was necessary to avoid jury confusion. Sloan , 282 Or. App. at 313-18, 386 P.3d 203. Accordingly, the Court of Appeals reversed the trial court's judgment and remanded for a new trial. Id. at 319, 386 P.3d 203.[3] On Apogee's petition, this court allowed review to address whether the trial court erred in refusing to give the Liability for Subsequent Conduct Instruction.[4]
II. ARGUMENTS ON REVIEW
On review, Apogee makes three arguments. First, Apogee argues that the Court of Appeals "erroneously applied the foreseeability principles" set forth in Fazzolari v. Portland School Dist. No. 1J , 303 Or. 1, 734 P.2d 1326 (1987), "in making its decision in this case." According to Apogee, "long-held Oregon precedent dictates that the Fazzolari foreseeability principles are not applicable in a case such as this one, that is based on a special relationship," specifically, the physician-patient relationship. Second, Apogee argues that the Court of Appeals "erroneously held that plaintiff's proposed instruction sets forth a correct statement of law." In Apogee's view, the instruction was incorrect, because it would "hold the original tortfeasor liable for all injuries the plaintiff might suffer while undergoing medical treatment."
**642 (Emphasis in original.) Third, Apogee argues that, even if the trial court erred in refusing to give the instruction, the error did not substantially affect plaintiff's rights because "the jury was instructed on how to decide the case if they found there was more than one cause of [Sloan's] death," and, therefore, "the trial court's refusal to give plaintiff's requested instruction would not *1102 likely have affected the verdict." We address those three arguments in turn.
III. ANALYSIS
A. The Relevance of Reasonable Foreseeability
Apogee asserts that the Court of Appeals "erroneously based [its] analysis upon the law applicable to ordinary common law negligence claims, which require application of the Fazzolari foreseeability analysis to determine liability." Apogee does not identify a particular holding as error. Instead, it asserts that the Court of Appeals
"cited foreseeability as central to its analysis of whether the subject instruction was a correct statement of law, whether it was supported by evidence, and whether the failure to give the instruction substantially affected plaintiff's rights. Thus, this improper application of the Fazzolari foreseeability analysis significantly affected the court's analysis of the determinative issues in this case, and resulted in an erroneous decision."
As we understand it, Apogee's argument is that foreseeability plays no role in medical negligence cases. That is incorrect. As explained below, in medical negligence cases, reasonable foreseeability serves as a limit on the scope of a defendant's liability. We do not understand Apogee to argue that there is no such limit.[5] And, contrary to Apogee's argument on review, neither Fazzolari nor the cases that predate it suggest that reasonable foreseeability principles "are not applicable in determining liability for medical malpractice based on a physician-patient relationship."
**643 1. Fazzolari
Traditionally, to prevail on a negligence claim, a plaintiff had to prove that (1) the defendant had a duty to the plaintiff, (2) the defendant breached the duty, (3) the breach was a factual cause and (4) a legal cause (or proximate cause) of (5) harm to the plaintiff measurable in damages. Aiken v. Shell Oil Co. et al. and Huey , 219 Or. 523, 535-36, 348 P.2d 51 (1959) ("One of the old and simple definitions of negligence is: 'There must be a duty on the defendant; a failure to perform that duty; and the failure to perform that duty must be the proximate cause of injury and damage to the plaintiff.' "). But, in Fazzolari , this court reformulated the elements for an ordinary negligence claim, stating:
"[U]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."
Fazzolari , 303 Or. at 17, 734 P.2d 1326. Thus, when asserting an ordinary negligence claim, a plaintiff must establish that the defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff.
In ordinary negligence claims, foreseeability plays a role in determining whether a defendant's conduct is negligent (in other words, in setting a defendant's standard of care) and whether a defendant should be liable for particular consequences of their negligent conduct (in other words, establishing the scope of a defendant's liability). As this court explained in Piazza v. Kellim , 360 Or. 58, 70, 377 P.3d 492 (2016),
"Foreseeability plays a role in at least two overlapping common-law negligence determinations: (1) whether the defendant's conduct unreasonably created a foreseeable risk of harm to a protected interest of the plaintiff such that the defendant may be held liable for that conduct-formerly described in terms of 'duty' and 'breach' as measures of negligent conduct; and (2) whether, because the **644 risk of harm was reasonably foreseeable, the defendant may be held liable to the plaintiff for the particular *1103 harm that befell the plaintiff-a concept that traditionally was referred to as 'proximate' cause and which, in our current analytical framework, operates as a legal limit on the scope of a defendant's liability for negligent conduct."
See also Fazzolari , 303 Or. at 14, 734 P.2d 1326 (explaining that this court's decision in Stewart v. Jefferson Plywood Co. , 255 Or. 603, 469 P.2d 783 (1970), "made foreseeable risk the test both of negligent conduct and of liability for its consequences without phrasing the test in terms either of causation or of duty").
As the introductory phrase of Fazzolari language quoted above indicates, the test for ordinary negligence may not apply if a party invokes "a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty." 303 Or. at 17, 734 P.2d 1326. That is because "the nature and scope of the duty owed by the defendant to the plaintiff can be created, defined, or limited based on, among other things, the relationship between or status of the parties." Towe v. Sacagawea, Inc. , 357 Or. 74, 86, 347 P.3d 766 (2015).
But the fact that a party has invoked a special relationship does not mean that foreseeability is irrelevant. As this court has explained,
"Even when a special relationship is the basis for the duty of care owed by one person to another, *** if the special relationship (or status or standard of conduct) does not prescribe a particular scope of duty, then 'common law principles of reasonable care and foreseeability of harm are relevant.' "
Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP , 336 Or. 329, 342, 83 P.3d 322 (2004) (quoting Cain v. Rijken , 300 Or. 706, 717, 717 P.2d 140 (1986) ). Thus, "when a plaintiff alleges a special relationship as the basis for the defendant's duty, the scope of that duty may be defined or limited by common-law principles such as foreseeability." Id.
As relevant here, a physician has a specified duty of care. When a physician-patient relationship exists, the physician has
**645 "the duty to use that degree of care, skill and diligence that is used by ordinarily careful physicians in the same or similar circumstances in the community of the physician or a similar community."
ORS 677.095(1). In other words, a physician has an affirmative duty "to provide the patient with the level of care that a reasonably prudent, careful, and skillful practitioner of the physician's discipline would have provided to the patient under the same or similar circumstances and within the same community." Tomlinson v. Metropolitan Pediatrics, LLC , 362 Or. 431, 444, 412 P.3d 133 (2018). There is nothing in the definition of that duty that precludes foreseeability from being a limit on the scope of liability. See Oregon Steel Mills , 336 Or. at 343-47, 83 P.3d 322 (holding that, even if accountant had failed to act with reasonable competence when performing work for plaintiff and failure caused a delay before stock could be sold, during which time the stock price fell, accountant was not liable for plaintiff's losses from the sale at the lower price because the price drop was not a reasonably foreseeable result of the delay, but rather was attributable to market forces); see also Piazza , 360 Or. at 72-73, 377 P.3d 492 (applying foreseeability as a limit on land owner's liability to an invitee). Thus, the fact that physicians have a specified duty of care does not mean that foreseeability is irrelevant in medical negligence cases.
2. Pre -Fazzolari cases
In connection with its argument that a negligence claim based on a special relationship "is not subject to the general foreseeability principles applicable to an ordinary common law negligence claim," Apogee asserts that such a claim "is governed by the rules applicable to that claim pre- Fazzolari ." But even under those rules, foreseeability is relevant in special relationship cases, including medical negligence cases. On that point, Simpson v. Sisters of Charity of Providence , 284 Or. 547, 588 P.2d 4 (1978), is illustrative.
In Simpson , the plaintiff brought a medical negligence action against a hospital based on its x-ray technicians' failure to get a clear image of the plaintiff's spine after he had fallen from a roof. After reviewing the x-rays, a doctor concluded that the plaintiff could be moved.
**646 But the plaintiff had a *1104 spinal injury, and the movement resulted in paralysis. On review, this court affirmed the trial court's denial of the defendant's motion for a directed verdict, concluding that the jury could find that the technicians had failed to exercise proper care and that the doctor's movement of the plaintiff and the resulting paralysis were reasonably foreseeable results of that failure. Id. at 558-59, 588 P.2d 4. Thus, even before Fazzolari , a medical professional whose conduct fell short of the standard of care could be liable for injuries caused by another's subsequent conduct if the subsequent conduct and injuries were reasonably foreseeable consequences of the medical professional's failure.
In sum, we reject Apogee's first argument that the Court of Appeals erred in referencing foreseeability. Foreseeability can limit a defendant's liability, even in special relationship cases, including medical negligence actions. Neither Fazzolari nor its predecessors stand for the proposition that foreseeability is inapplicable in medical negligence actions.
B. The Correctness of the Requested Instruction
Apogee's second argument on review is that the Court of Appeals erred in concluding that the Liability for Subsequent Conduct Instruction was a correct statement of the law. As mentioned, Apogee asserts that the instruction would "hold the original tortfeasor liable for all injuries the plaintiff might suffer while undergoing medical treatment." (Emphasis in original.) According to Apogee, "the requested instruction states that defendant would be liable for 'any additional injury caused by the subsequent conduct of' the third party." (Emphasis in original.) That is incorrect. Again, plaintiff's requested instruction, which is similar to UCJI 20.07, states:
"If you find the defendant was negligent and that such negligence caused injury to the plaintiff, the defendant would also be liable for any additional injury caused by the subsequent conduct of another person or entity, even if such conduct was negligent or wrongful, as long as the subsequent conduct and risk of additional injury were reasonably foreseeable."
**647 The instruction does not hold an original tortfeasor liable for all injuries that a plaintiff might suffer after being injured by the tortfeasor, or even all injuries that a plaintiff might suffer while undergoing medical treatment for the injuries caused by the tortfeasor. The text of the instruction expressly limits the original tortfeasor's liability by providing that the tortfeasor is liable for additional injuries caused by the subsequent conduct of another "as long as the subsequent conduct and risk of additional injury were reasonably foreseeable." (Emphasis added.)
Apogee also argues that an original tortfeasor's liability for injuries caused by the subsequent conduct of a medical provider has a special limitation. According to Apogee, "a tortfeasor who causes injury to a plaintiff can be held liable for additional injuries caused by a third-party medical provider only if the injuries caused by that third party resulted from professional procedures directed at an injury which was caused or could have been understood by the physician to have been caused by the original injurious event. " (Emphases in original.) Apogee bases that argument on this court's decision in Woosley v. Dunning , 268 Or. 233, 520 P.2d 340 (1974), and the Court of Appeals' decision in Martin v. Bohrer , 84 Or. App. 7, 733 P.2d 68 (1987), aff'd by an equally divided court , 307 Or. 144, 764 P.2d 550 (1988).
In Woosley , a wrongful death action, the plaintiff alleged that the decedent had sustained a head injury in a car accident caused by the defendant and that, when the decedent underwent medical tests related to the head injury, he suffered a brain hemorrhage and died. The defendant moved for a directed verdict on the ground that, even if he was liable for the decedent's head injury from the car accident, he was not liable for the decedent's death from the medical testing. The defendant asserted that "the plaintiff's evidence established as a matter of law that the diagnostic tests were an intervening force which constituted a superseding cause of [the decedent's] death." 268 Or. at 251, 520 P.2d 340. The trial court denied the defendant's motion for a directed verdict. This court affirmed, ruling that "one who negligently injures another person is liable for damages *1105 not only for the original injury, but also for all additional injury caused by a **648 physician's treatment, even if negligent, so long as the treatment was provided in good faith effort to diagnose, cure or alleviate the original injury." Id. As should be apparent, the Woosley rule reflects the facts of that case. In effect, it serves to identify a type of injury that is a reasonably foreseeable consequence of an earlier injury caused by a tortfeasor.
That interpretation is supported by the fact that, in discussion of the jury instructions in the case, the Woosley court endorsed the rule that an original tortfeasor is liable for the reasonably foreseeable consequences of his conduct, including injuries caused by-in the parlance of the time-an intervening force. Specifically, in holding that the trial court had not erred in refusing to give the defendant's requested instructions regarding intervening forces and superseding causes, this court stated that the defendant's instructions were "incomplete" because
"they would not have informed the jury of the important qualification *** that 'where the negligent conduct of the actor (defendant) creates or increases the foreseeable risk of harm through the intervention of another force, and is a substantial factor in causing this harm, such intervention is not a superseding cause.' "
Id. at 255, 520 P.2d 340. Thus, Woosley supports the view that an original tortfeasor is liable for the reasonably foreseeable consequences of his initial injuries to a plaintiff, and those consequences can include, but are not limited to, additional injuries caused by a physician's conduct in diagnosing or treating the initial injuries. Plaintiff's requested instruction in this case is not inconsistent with Woosley .
In addition to Woosley , Apogee relies on the Court of Appeals' decision in Martin . In Martin , the plaintiff brought an action against the defendant, seeking damages for injuries suffered in a car accident. As part of the discovery process in that case, the defendant arranged to have the plaintiff examined by a doctor that the defendant had selected. During that examination, the doctor injured the plaintiff's knee, which had not been injured in the car accident. The plaintiff then amended his complaint against the defendant to include an allegation regarding the knee injury. The trial court struck the allegation, apparently on the ground that **649 "as a matter of law, the knee injury was not sufficiently related to the original accident for defendant to be responsible for it." 84 Or. App. at 9, 733 P.2d 68.
After prevailing on his claims for the injuries he sustained during the car accident itself, the plaintiff appealed, asserting that the trial court had erred in striking his allegation regarding the knee injury. The Court of Appeals agreed that the trial court had erred. The court noted that it was unclear how the knee injury occurred or why the knee became an object of the doctor's attention. It recognized the possibility that, during a medical examination of one condition, a doctor may notice and explore an entirely independent and unrelated condition. Id. at 11-12, 733 P.2d 68. In light of that possibility, the court rejected the plaintiff's argument that an original tortfeasor is liable for all injuries a plaintiff sustains in a medical examination by a physician simply because the plaintiff has consulted the physician to diagnose, treat, or evaluate an injury caused by the original tortfeasor. Id. The court identified the issue before it as "when relief is available from the original tortfeasor for an injury sustained in subsequent medical procedures" and announced, as a "per se rule," that "the original tortfeasor's liability extends only to injuries that result from professional procedures directed at an injury which was caused or could have been understood by the physician to have been caused by the original injurious event." Id. at 12, 733 P.2d 68. The court then concluded that the plaintiff's allegation about his knee injury was sufficient to support a claim that the knee injury resulted from the doctor's attempt to diagnose, treat, or evaluate the injuries from the car accident and, therefore, the trial court had erred in striking the allegation. Id. at 13, 733 P.2d 68.
Martin stands for the proposition that the fact that a plaintiff consulted a doctor about an injury caused by an original tortfeasor is not sufficient to make the original tortfeasor liable for all injuries the plaintiff sustains in connection with the consultation.
*1106 Thus, as the Martin court observed, an original tortfeasor would probably not be liable for injuries a plaintiff sustained if, while visiting a doctor for diagnosis of the injuries caused by the tortfeasor, the plaintiff tripped over negligently installed carpeting in the **650 waiting room, because "the relationship between the original incident and the further injury *** seems too tenuous and circumstantial for the first tortfeasor to be responsible." Id. at 12, 733 P.2d 68. Or, in Fazzolari terms, the further injury would not be reasonably foreseeable and, therefore, would be outside the scope of liability.
Here, we do not think that the facts alleged are, as a matter of law, outside the scope of liability. Plaintiff's theory of the case was that Apogee failed to diagnose and treat Sloan's fractured ribs and internal bleeding. As this court recognized in Simpson , in which it held that a hospital's liability for its x-ray technicians' failure to get clear x-rays could extend to injuries caused by a doctor's later actions based on the x-rays, if a medical care provider negligently fails to provide information to a subsequent medical care provider, the first provider can be liable for injuries caused by the second provider's actions, if both the second provider's actions and the resulting injuries were reasonably foreseeable consequences of the first provider's negligence. Martin does not alter that rule.
In sum, Apogee's second argument-that plaintiff's requested instruction is not a correct statement of law-is unavailing. Contrary to Apogee's assertion, the instruction does not provide that an original tortfeasor is liable for any additional injury caused by the subsequent conduct of a third party. Instead, it limits an original tortfeasor's liability to reasonably foreseeable subsequent conduct and injuries, which is consistent with this court's decisions in Simpson and Woosley and the Court of Appeals' decision in Martin .
C. The Effect of the Refusal to Give the Requested Instruction
Apogee's third and final argument is that, even if the trial court erred in refusing to give plaintiff's Liability for Subsequent Conduct Instruction, the error did not substantially affect plaintiff's rights and, therefore, does not require reversal. ORS 19.415(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party."). Specifically, Apogee argues that the trial court's failure to give the instruction did not **651 substantially affect plaintiff's rights because, although the jury found that Apogee was negligent, the jury also found that Apogee's negligence did not cause Sloan's death.
When determining whether a trial court's refusal to give a party's requested instruction substantially affected the party's rights, this court considers the instructions as a whole and in light of parties' theories and evidence. Purdy v. Deere and Company , 355 Or. 204, 227-28, 324 P.3d 455 (2014). If there is "some likelihood that the jury reached a legally erroneous result" because of the trial court's refusal to give the party's requested instruction, then the refusal substantially affected the party's rights. Id. at 231-32, 324 P.3d 455.
As described above, Apogee's theory at trial was that Sloan's death was caused by something that happened after Sloan left its care and went to Three Fountains. Apogee did not specify a particular cause, but it presented evidence suggesting that Sloan's displaced rib fractures and internal bleeding could have been caused by ordinary movements, physical therapy, or a fall. Apogee's evidence raised the possibility that Sloan himself could have caused the displacement and bleeding by breathing, rolling, getting in and out of bed, or falling. It also raised the possibility that Three Fountains could have caused the displacement and bleeding through its actions (in physical therapy) or its inactions (in failing to supervise Sloan's movements, if Sloan fell at Three Fountains). In addition, Apogee presented evidence that Sloan's condition deteriorated for two days at Three Fountains, before Three Fountains returned Sloan to the hospital, thereby raising the possibility that Three Fountains caused Sloan's death by failing to respond promptly. In short, Apogee's defense was that someone else's subsequent conduct caused Sloan's death. Given Apogee's theory and evidence, it was important for the jury to be instructed on the law governing a defendant's liability for the injuries caused by another's subsequent *1107 conduct, which is exactly what plaintiff's requested instruction did. Without the requested instruction, the jury may not have understood that Apogee could be responsible for the consequences of another's subsequent conduct, which was a key issue in the case. **652 In arguing that the trial court's failure to give plaintiff's requested instruction did not substantially affect plaintiff's rights, Apogee points out that the jury found that, although Apogee was negligent, its negligence did not cause Sloan's death. The problem with that argument is that, in order to determine whether Apogee caused Sloan's death, the jury needed to know that Apogee could be responsible for the subsequent conduct of another. Without the requested instruction, that would not have been clear to the jury. Furthermore, Apogee requested, and the trial court gave, an instruction that provided that, when there are two or more possible causes, the jury must determine the causes for which a defendant is responsible for and then determine whether those causes are more probable than other possible causes. Specifically, as quoted above, the trial court instructed the jury:
"Where there are two or more possible causes for an injury for one or more of which a defendant is not responsible, there can be no recovery unless it is shown that as between the causes in question, the cause for which a defendant is responsible is the more probable.
"If the evidence leaves it as probable that the injury was a result of one cause as much as another, then the plaintiff cannot recover from that defendant."
That instruction would have encouraged the jury to identify possible causes, determine who was responsible for each of them, and then determine which cause was the more probable. Because the jury was not specifically instructed that Apogee could be responsible for the subsequent conduct of another, it could have erred in determining the causes for which Apogee could be responsible, and that error could have affected its determination of whether Apogee was liable for causing Sloan's death. Consequently, we conclude that-in light of Apogee's theory and evidence and the instruction it requested regarding two or more possible causes-there is some likelihood that the trial court's refusal to give plaintiff's requested instruction caused the jury to base its verdict on an incomplete understanding of the relevant law and to reach a legally erroneous result. Therefore, we must reverse and remand.
**653 IV. CONCLUSION
To summarize, we hold that, contrary to Apogee's arguments on review, (1) the Court of Appeals did not err in applying foreseeability principles because reasonable foreseeability limits liability in medical negligence cases, (2) plaintiff's requested jury instruction regarding an original tortfeasor's liability for the subsequent conduct of another was a correct statement of the law because an original tortfeasor is liable for the reasonably foreseeable consequences of his conduct, including reasonably foreseeable conduct and injuries by subsequent medical providers, and (3) the trial court's failure to give plaintiff's requested instruction requires reversal because, given how the case was litigated and the instructions the jury received, the jury could have based its verdict on an incorrect understanding of the relevant law.
The decision of the Court of Appeals is affirmed. The judgment of the circuit court for defendant Apogee is reversed and remanded; the circuit court judgment is otherwise affirmed.

Uniform Civil Jury Instruction 20.07, "Liability for Subsequent Conduct of Third Party," provides:
"If you find that the defendant's conduct was negligent and caused some injury to the plaintiff, then the defendant is liable for any reasonably foreseeable additional injury to the plaintiff. The defendant is liable even if the additional injury was caused by another person's subsequent negligent or wrongful conduct, as long as the subsequent conduct and the risk of additional injury were reasonably foreseeable."

In addition to the quoted instruction, plaintiff asked for another instruction on a tortfeasor's liability for the subsequent conduct of another. Sloan , 282 Or. App. at 308, 386 P.3d 203. The trial court refused to give that instruction as well. Id. at 309, 386 P.3d 203. On appeal, the Court of Appeals held that that instruction was not a correct statement of the law. Id. at 312, 386 P.3d 203. That instruction is not at issue on review.

Because it reversed and remanded based on the trial court's refusal to give the Liability for Subsequent Conduct Instruction, the Court of Appeals did not address whether the trial court had erred by denying plaintiff's motion for a new trial. Sloan , 282 Or. App. at 303 n. 2, 386 P.3d 203.

As mentioned, the jury found Providence was not negligent. Accordingly, Providence is not a party to this case on review.

In this case, plaintiff's instruction informed the jury that, if Apogee negligently injured Sloan, it would be liable for the reasonably foreseeable consequences of that injury, including additional injuries caused by others' subsequent conduct, if both the subsequent conduct and additional injuries were reasonably foreseeable . In the instruction, reasonable foreseeability limits the defendant's liability.