Argued and submitted December 12, 2017, reversed and remanded
September 18, 2019

Alan N. O'KAIN;
Victoria E. O'Kain;
Cambridge Land Company, LLC; and
Cambridge Land Company, II, LLC,
*Plaintiffs-Appellants,*

*v.*

Sanford LANDRESS;
Greene & Markley PC,
an Oregon professional corporation;
and Charles Markley,
*Defendants-Respondents.*

Clackamas County Circuit Court
CV15090658; A162859

450 P3d 508

Plaintiffs, two limited liability corporations and two individual plaintiffs, appeal from a judgment of the trial court dismissing with prejudice their legal malpractice claim against defendant attorneys and their law firm. Plaintiffs' claim arose out of advice defendants gave about the need to file for bankruptcy in advance of a state court's appointment of receivers to manage the corporate properties in foreclosure proceedings. Defendants moved for summary judgment on the grounds that plaintiffs' damages caused by the appointment of receivers were not reasonably foreseeable and that the individual plaintiffs were not defendants' clients. The individual plaintiffs moved for partial summary judgment on the ground that they were defendants' clients as a matter of law. The trial court granted defendants' motion and denied plaintiffs' motion. Plaintiffs assign error to both rulings. *Held*: The trial court erred in granting defendants' motion for summary judgment, because the evidence in the record on summary judgment gives rise to a genuine issue of material fact as to whether plaintiffs' damages resulting from the appointment of receivers were reasonably foreseeable to defendants. The record on summary judgment also creates a genuine issue of material fact that precludes summary judgment for defendants on the ground that defendants did not represent the individual plaintiffs. Those same facts require the conclusion that there was a genuine issue of material fact that precludes summary judgment for plaintiffs on plaintiffs' motion for partial summary judgment.

Reversed and remanded.

Michael C. Wetzel, Judge.

Margaret H. Leek Leiberan argued the cause and filed the briefs for appellants.

Nena Cook argued the cause for respondents. Also on the brief were Lori Irish Bauman and Ater Wynne LLP.

Before Hadlock, Presiding Judge, and Egan, Chief Judge, and Mooney, Judge.*

EGAN, C. J.

Reversed and remanded.

_____

* Hadlock, J., *vice* Wollheim, S. J.; Mooney, J., *vice* Garrett, J. pro tempore.

**EGAN, C. J.**

Plaintiffs Alan and Victoria O'Kain (the individual plaintiffs), Cambridge Land Company, LLC (Cambridge), and Cambridge Land Company II, LLC (Stoneridge) (together the LLC Plaintiffs), appeal from a judgment of the trial court dismissing with prejudice their legal malpractice claim against defendants Sanford Landress, Charles Markley, and their law firm, Greene & Markley. Plaintiffs assign error to the trial court's granting of defendants' motion for summary judgment on the claim and the trial court's denial of plaintiffs' motions for partial summary judgment on the issue whether defendants represented the individual plaintiffs as well as the LLC Plaintiffs. We conclude that the trial court did not err in rejecting the individual plaintiffs' motion for partial summary judgment, but erred in granting defendants' motion and therefore reverse.

On review of cross-motions for summary judgment, we view the record for each motion in the light most favorable to the party opposing it to determine whether there is a genuine issue of material fact and, if not, whether either party is entitled to judgment as a matter of law. ORCP 47 C; *Yartzoff v. Democrat-Herald Publishing Co.*, 281 Or 651, 655, 576 P2d 356 (1978); *Vision Realty, Inc. v. Kohler*, 214 Or App 220, 222, 164 P3d 330 (2007).

The LLC Plaintiffs were in the business of owning and managing the Stonebridge and Cambridge apartments in Salem, Oregon. The LLC Plaintiffs had defaulted on their loans and were subject to a foreclosure action in Marion County Circuit Court. The lender, Fannie Mae, sought the appointment of a receiver, and the court set a hearing date of September 27, 2013.

Plaintiff Alan O'Kain is an attorney licensed to practice law in California. He was the person in control of both LLC Plaintiffs. Alan and his revocable living trust were the primary investors in Cambridge and the sole investors in Stonebridge.[1] Alan did not want to lose management of the properties, and he believed that the filing of

---

[1] The Alan O'Kain Trust, a revocable living trust, was an investor in the LLC Plaintiffs.

Chapter 11 bankruptcy on behalf of each LLC would stay the foreclosure proceeding and prevent the appointment of a receiver so that he could retain management and control of the properties, to allow him to preserve his existing and future equity. *See* 11 USC § 362(d) (providing for automatic stay of judicial proceedings upon filing of petition for bankruptcy).

Alan is married to plaintiff Victoria O'Kain, who is an inactive member of the Oregon State Bar and a former associate attorney with Greene & Markley. Victoria O'Kain does not have a direct financial interest in or formal control of the LLC Plaintiffs.[2] Defendants are a law firm and attorney members of the firm who have extensive experience in insolvency law.

In her declaration in opposition to defendants' motion for summary judgment and in support of plaintiffs' motion for partial summary judgment, Victoria O'Kain averred that she chose to consult defendants for advice about preserving the equity and managerial control of Stoneridge and Cambridge. In their declarations, the individual plaintiffs averred that defendant Markley had represented them on multiple occasions in the past and that, prior to meeting in person with defendants, plaintiffs had several telephone conversations with defendants in which they discussed their concern that a receiver appointed by the Marion County Circuit Court would represent only Fannie Mae's creditor interest in the properties and would not manage the properties so as to preserve Alan's equity.

On September 25, 2013, two days before the scheduled hearing on the appointment of a receiver in the foreclosure action, the individual plaintiffs met with defendants Markley and Landress at the Greene & Markley firm. Plaintiffs' legal counsel in the foreclosure proceeding also attended. In their declarations, the individual plaintiffs stated that, at the September 25 meeting, defendant Landress advised plaintiffs not to worry about the appointment of a receiver in the foreclosure proceedings. He told them that, even if the state court appointed receivers, the

---

[2] Neither party has made any argument about the significance of Victoria's lack of ownership interest, and we express no opinion on that issue.

Bankruptcy Court in a later Chapter 11 bankruptcy proceeding would remove the receiver and return managerial control to Alan as the debtor in possession. Plaintiffs stated in their declarations that defendants advised plaintiffs to have their foreclosure counsel attend the receivership hearing before filing for Chapter 11 bankruptcy. Defendants also advised Alan not to restructure his personal investment interest in the LLCs before filing a Chapter 11 bankruptcy. The individual plaintiffs stated in their declarations that they believed at the September 25 meeting that defendants were representing them personally as well as the LLC Plaintiffs and were giving them advice on how to protect Alan's interest in the properties. Defendants did not tell plaintiffs at the September 25 meeting that they were representing only the LLC Plaintiffs. Alan relied on defendants' advice and did not have the LLC Plaintiffs file for Chapter 11 bankruptcy in advance of the receivership hearing.

After the September 25 meeting, Alan signed a "retainer contract" providing that Green & Markley was retained "to represent [the LLC Plaintiffs] as legal counsel for research and advice concerning feasibility of Ch. 11 Bankruptcy filing."

At the receivership hearing for Stoneridge on September 27, 2013, the Marion County Circuit Court entered an order appointing a receiver selected by Fannie Mae. On October 14, the court entered an order appointing the same receiver in the Cambridge foreclosure action.

After the appointment of a receiver on Stoneridge, on September 30, 2013, Landress sent an email to Alan and Victoria advising them against Chapter 11 bankruptcy, because of the costs and the risks of failure, and recommending Chapter 7 bankruptcy instead, which would require a sale of the properties.[3]

Alan sought advice from different counsel. On October 16, Stoneridge filed for Chapter 11 bankruptcy with

---

[3] Landress's advice included estimated costs for Chapter 11 bankruptcy of $100,000 for a legal retainer and at least $30,000 to $40,000 for expert witness fees. Landress advised plaintiffs that the early, "First-Day Motion" stage of Chapter 11 bankruptcy litigation would include "litigation to get control of the properties back from the receiver."

different legal counsel, and on October 18, Cambridge filed for Chapter 11 bankruptcy with the same counsel. On November 14, 2013, over plaintiffs' objections, the Bankruptcy Court determined that the receiver selected by Fannie Mae and appointed in the foreclosure proceedings would serve as receiver in the bankruptcy proceeding.

While the matter was in Chapter 11 bankruptcy, in August 2014, Alan and Victoria found a purchaser for the properties for a combined price of $9.7 million, which exceeded the LLC Plaintiffs' debt to Fannie Mae. With the court's approval, the properties were sold and, in December 2014, the court dismissed the bankruptcy proceeding.

In September 2015, plaintiffs brought this legal malpractice action, alleging that defendants were negligent in advising them at the September 25 meeting to wait until after the receivership hearing to file for bankruptcy. Plaintiffs alleged that, as a result of defendants' negligence, the management of the properties was removed from Alan's control and remained within the control of the receiver selected by Fannie Mae. Plaintiffs alleged that, as a result of defendants' negligence, they incurred costs in the bankruptcy proceeding relating to the appointment of the receiver that would not otherwise have been incurred, including the receiver's fees of $60,000, the receiver's legal fees of $350,000, and an extraordinary bankruptcy administration fee of $150,000. Plaintiffs alleged that they were further damaged by a reduction in the properties' values and loss of rental revenues as a result of the receiver's maintenance of vacancies.[4]

As noted, the trial court granted defendants' motion for summary judgment on plaintiffs' claim and denied plaintiffs' motion for partial summary judgment. The trial court

---

[4] In November 2015, the LLC Plaintiffs and Alan O'Kain brought breach of contract and breach of fiduciary duty claims against Hummel, a former member of the LLC Plaintiffs and the former property manager of Stoneridge and Cambridge. The complaint alleged that Hummel had mismanaged the properties during an unspecified period ending July 2013, leaving the properties in horrific condition and resulting in a decrease in value of $1 million and total damages of $2 million. The complaint alleged that the receiver appointed by the court in October 2013 "further detailed and accounted for the destruction of the properties."

granted defendants' motion on the grounds that (1) only the LLC Plaintiffs, and not the individual plaintiffs, were clients of defendants, and (2) the damages that the LLC Plaintiffs claim they suffered as the result of the appointment of a receiver were not foreseeable by defendants. The court denied without further explanation plaintiffs' motion for partial summary judgment seeking a determination that the individual plaintiffs were defendants' clients.

On appeal, plaintiffs assign error to the granting of defendants' motion for summary judgment and the denial of plaintiffs' motion for partial summary judgment. Because it is potentially dispositive, we first address plaintiffs' contention, raised in their third assignment of error, that the trial court erred in granting defendants' motion on the ground that the LLC Plaintiffs' damages alleged to have been caused by the receiver's mismanagement were not reasonably foreseeable by defendants as a matter of law.

Initially, we note what is not at issue in the third assignment. Defendants do not dispute plaintiffs' contentions in their declarations that defendants advised against the need to rush to file for bankruptcy before the appointment of a receiver.[5] Defendants also have not challenged in their motions for summary judgment the LLC Plaintiffs' allegation of damages that they assert are attributable to the appointment of a receiver or whether defendants' conduct was the factual cause of plaintiffs' damages. The only issue raised in the motion for summary judgment on which the trial court ruled was whether it was reasonably foreseeable to defendants that the receiver would mismanage the properties so as to cause the LLC Plaintiffs' alleged

---

[5] In their answer to the complaint, defendants alleged that "there was no advice by Defendants not to file for bankruptcy before the appointment of a receiver." However, in their declarations, Landress and Markley did not contradict plaintiffs' statements that defendants advised them on September 25 to attend the receivership hearing before filing for bankruptcy. Defendants' primary contentions are that they did not represent the individual plaintiffs and that their representation of the LLC Plaintiffs was limited by the retainer agreement to "research and advice concerning feasibility of Ch. 11 Bankruptcy filing." However, defendants' arguments do not address plaintiffs' contention and averments that the advice on which they relied and that damaged them was the advice that defendants gave at the September 25 meeting, before the signing of the retainer agreement, to attend the receivership hearing before filing for bankruptcy.

damages. The trial court explained in its letter opinion that, "as a matter of law, it was not foreseeable that the independent acts of a court-supervised fiduciary would cause the damages alleged by Plaintiffs to have occurred." We have reviewed the record on summary judgment in the light most favorable to plaintiffs and conclude that it does present a genuine issue of material fact that precludes summary judgment.

Ordinarily, foreseeability is a factual determination; if disputed, the question is one to be decided by the factfinder. *Piazza v. Kellim*, 360 Or 58, 70, 377 P3d 492 (2016). The record presents a genuine issue of material fact if "a reasonable person considering the potential harms that might result from his or her conduct would have reasonably expected the injury to occur." *Chapman v. Mayfield*, 358 Or 196, 206, 361 P3d 566 (2015). The Supreme Court said in *Chapman* that "[t]he community's judgment, usually given voice by a jury," determines whether a defendant's conduct created a reasonably foreseeable risk of harm. A court will intervene to remove a case from the jury "only when it can say that the actor's conduct clearly meets the standard or clearly falls below it." *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 607, 469 P2d 783 (1970); *see also Sloan v. Providence Health System*, 282 Or App 301, 312, 300 P3d 203 (2016), *aff'd*, 364 Or 635, 437 P3d 1097 (2019) ("'Foreseeability' acts as a limitation on liability and reflects societal judgment regarding the extent to which a defendant can be considered to be at fault for a plaintiff's harm.").

In the case of a special relationship such as that of the attorney and client, the relationship may create or define a defendant's duty to the plaintiff that goes beyond the ordinary duty to avoid a foreseeable risk of harm. *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 340-42, 83 P3d 322 (2004); *Watson v. Meltzer*, 247 Or App 558, 565, 270 P3d 289 (2011), *rev den*, 352 Or 266 (2012). So, for example, we have said that in the lawyer-client relationship, the duty of an attorney toward the client is "to act as a reasonably competent attorney in protecting and defending the interests of the client." *Pereira v. Thompson*, 230 Or App 640, 654, 217 P3d 236 (2009). Although the relationship creates a special duty of care, even in that context, the

harm itself must be a reasonably foreseeable consequence of the defendant's conduct. *See Oregon Steel Mills, Inc.*, 336 Or at 344-45 (addressing foreseeability of harm in professional malpractice claim). Here, the question in reviewing the trial court's ruling on summary judgment is whether there is evidence creating a genuine issue of material fact as to whether plaintiffs' alleged damages were a reasonably foreseeable consequence of defendants' advice to attend the receivership hearing before filing for bankruptcy.

Likely in an effort to narrow the inquiry to one on which defendants thought they could prevail, defendants contended that the record on summary judgment did not give rise to a genuine issue of material fact on the foreseeability of the receiver's mismanagement, casting plaintiffs' claim as one based exclusively on the receiver's mismanagement of the properties.[6] Defendants contended that the LLC Plaintiffs cannot recover on the malpractice claim because they have not been able on summary judgment to create an issue of fact concerning the foreseeability of the mismanagement by the receiver. But, even assuming that some of the LLC Plaintiffs' damages have as their source mismanagement by the receiver, mismanagement by the receiver was not the only source of the LLC Plaintiffs' damages as alleged in the complaint or as put forth in the declarations, and a failure to prove the foreseeability of mismanagement would not defeat the claim. Rather, the LLC Plaintiffs also asserted damages arising generally from the appointment of a receiver—which caused them to lose control of the properties and resulted in costs relating only to the appointment of the receiver. Plaintiffs are entitled to prevail on appeal if the record on summary judgment presents a genuine issue of material fact as to whether any of the LLC Plaintiffs' losses were a reasonably foreseeable consequence of defendants' conduct. *Oregon Steel Mills, Inc.*, 336 Or at 344. We conclude that the evidence in the record on summary judgment gives rise to a genuine question of material fact on that issue: In his declaration, defendant Markley stated that Alan O'Kain consulted Greene & Markley "to express an interest in having

---

[6] The trial court broadened the issue slightly in its ruling, explaining that it was not foreseeable that the independent acts of a court-supervised fiduciary would cause the damages alleged.

the LLC Plaintiffs file bankruptcy to block the appointment of a receiver." In their own declarations, the individual plaintiffs averred that (1) they were concerned that management of the properties by the lender's chosen receiver would preserve only the lender's interest and not Alan's existing and potential equity in the properties and (2) they expressed those concerns to defendants. In his declaration, Alan stated that at the meeting of September 25, 2013,

> "Landress assured us that the appointment of receivers in the foreclosure cases was nothing to worry about because (a) there was a chance we could win those hearings and (b) because even if the state court appointed the receivers, the bankruptcy court in a later chapter 11 bankruptcy filing would remove the receivers and return managerial control to me as debtor in possession. Defendants instructed us to send our state court attorney to argue the receiver hearing before filing the chapter 11."

Subsequently, in his September 30 email, sent first to Victoria and then to Alan, Landress advised plaintiffs not to file for Chapter 11 bankruptcy. In that email, Landress explained that a Chapter 11 bankruptcy would be costly and that efforts to regain control of the properties from the receiver "will likely be hotly opposed by the government lender represented by a big expensive law firm." Landress told plaintiffs that, to regain control of the properties under Chapter 11, plaintiffs would first

> "have to win the tough and expensive 'First-Day' motion battles. That is not easy in this type of case, especially not within the limited resources at hand and the tough, well-funded opponent."

Landress's September 30 email had a decidedly different tone from the assurances that Alan and Victoria declared Landress gave them in their in-person meeting with defendants on September 25 that "a later chapter 11 bankruptcy filing would remove the receivers and return managerial control" to plaintiffs. There is evidence from which it could be found that plaintiffs had expressed to defendants their interests in Alan retaining control of the properties so as to maximize their equity and value, and had shared with defendants their concern that a receiver selected by the lender would not have Alan's interests in mind. Landress's

September 30 email is evidence that, contrary to plaintiffs' interest in having Alan retain control of the properties, and despite the advice given on September 25, defendants were aware that the appointment of a receiver in the foreclosure proceeding would result in Alan's loss of control that would be hard to undo in a subsequent Chapter 11 bankruptcy.

Defendants asserted in the trial court and assert on appeal that plaintiffs have not offered "concrete facts" from which it may be found that plaintiffs' damages due to the negligence of an "intervening third party"—the court-appointed receiver—were reasonably foreseeable. *See Piazza*, 360 Or at 69-70 (stating that "[t]he concept of foreseeability embodies a prospective judgment about the course of events; it 'therefore ordinarily depends on the facts of a concrete situation' and, if disputed, is a jury question" (quoting *Fazzolari v. Portland School Dist. No. lJ*, 303 Or 1, 4, 734 P2d 1326 (1987)). But that argument is a red herring. As noted above, the receiver's "mismanagement" of the properties by maintaining a high vacancy rate was but one source of the LLC Plaintiffs' alleged damages. Plaintiffs contend that it was the *appointment* of the receiver and the loss of Alan's ability to control the properties that was the primary cause of their loss. The individual plaintiffs presented evidence that they shared with defendants their fear that the management of the properties by the lenders' receiver would preserve only the lender's interest in the recovery of debt and not Alan's existing and future equity in the property. Alan averred that he hoped to continue to manage the properties to allow him to refinance the properties and return them to profitability. Defendants have not disputed those assertions *and also did not contend in their motion for summary judgment that the LLC Plaintiffs have not shown that they suffered damages as a result of Alan's loss of control of the properties.* Their only contention was that "mismanagement" by the receiver was not foreseeable. But it was reasonably foreseeable to defendants that the appointment of a receiver in the foreclosure proceeding would create a risk that Alan would not be able to regain control of the properties—a risk that was contrary to plaintiffs' expressed interest.

In any event, even assuming that defendants' knowledge of the risk of the loss of Alan's ability to control the

properties is not, in itself, sufficient to avoid summary judgment, plaintiffs have alleged damages in addition to those relating to loss of control, also due to the appointment of the receiver. In their complaint, plaintiffs alleged that the individual plaintiffs and the LLC Plaintiffs incurred costs for the receiver in the bankruptcy proceeding. Defendants did not dispute those costs in their answer or on summary judgment, but assert on appeal that plaintiffs have not offered evidence that those costs are greater than would have been incurred without the appointment of a receiver. The ability to ultimately prove damages, however, is not an issue relating to foreseeability of harm, which was the basis for defendants' summary judgment motion and the trial court's ruling. The record on summary judgment would permit the finding that it was reasonably foreseeable to defendants that the appointment of a receiver in the foreclosure proceeding would result in increased costs to the LLC Plaintiffs. We conclude therefore that the trial court erred in granting defendants' motion for summary judgment based on the ground that plaintiffs' damages caused by the appointment of a receiver were not reasonably foreseeable.[7]

Defendants contend that the trial court's rulings on summary judgment should nonetheless be affirmed on two other grounds raised in defendants' motion for summary judgment but not reached by the trial court. We have considered and reject those contentions without discussion.

The trial court's second basis for granting defendants' motion for summary judgment was its determination that the individual plaintiffs were not defendants' clients. In reaching that conclusion, the court mentioned that both individual plaintiffs are lawyers and that the retainer agreements named only the LLC Plaintiffs as clients and addressed services that would be applicable only to the LLCs. In their first assignment of error on appeal, plaintiffs contend that there is evidence in the record on summary judgment from which a trier of fact could find that the individual plaintiffs were clients as well. In their second assignment,

---

[7] We address only issues raised on summary judgment, *see Two Two v. Fujitec America, Inc.*, 355 Or 319, 331, 325 P3d 707 (2014), and do not imply any conclusion as to plaintiffs' ultimate ability to prove damages at trial.

plaintiffs contend that the evidence in the record on summary judgment requires the conclusion that plaintiffs were defendants' clients as a matter of law. Defendants respond that the only lawyer-client relationship was that formed by defendants' retainer agreement with the LLCs, that the only advice given by defendants was Landress's letter of September 30, directed to the LLCs, and that there is no evidence in this record that defendants gave advice to the individual plaintiffs. In light of the retainer agreement, defendants contend that there is no "objective evidence" that would support plaintiffs' subjective belief that defendants represented the individual plaintiffs personally.

We recently addressed the issue of when a lawyer-client relationship arises in *Jenson v. Hillsboro Law Group,* 287 Or App 697, 403 P3d 455 (2017), a legal malpractice case, and in *Lahn v. Vaisbort*, 276 Or App 468, 470, 369 P3d 85 (2016), also a legal malpractice case. In *Lahn*, 276 Or App at 477, citing *In re Wyllie*, 331 Or 606, 615, 19 P3d 338 (2001), we said that a lawyer-client relationship need not arise from an explicit contract, but may be inferred from the circumstances and the conduct of the parties. Contrary to defendants' assumption, the existence of the retainer agreement with the LLC Plaintiffs does not preclude, and is not inconsistent with, a determination that the individual plaintiffs were also defendants' clients. Citing *In re Weidner*, 310 Or 757, 768, 801 P2d 828 (1990), we said in *Lahn* that a lawyer-client relationship may exist when an attorney has performed services of the kind that are traditionally performed by lawyers, or where a putative client has intended that the relationship be created. *Lahn,* 276 Or App at 477. As to that latter circumstance, we quoted from the Supreme Court's opinion in *Weidner* for the standard that guides the court in determining whether a relationship has been created as a result of the putative client's intentions:

> "'[A] putative client's subjective, uncommunicated intention or expectation [of a lawyer-client relationship] must be accompanied by evidence of objective facts on which a reasonable person would rely as supporting existence of that intent; by evidence placing the lawyer on notice that the putative client had that intent; by evidence that the lawyer shared the client's subjective intention to form the

relationship; or by evidence that the lawyer acted in a way that would induce a reasonable person in the client's position to rely on the lawyer's professional advice.'"

*Lahn*, 276 Or App at 477 (quoting *Weider*, 310 Or at 770) (alteration in *Lahn*). In the absence of an express agreement, a putative client's subjective belief that there is a lawyer-client relationship must be accompanied by objective facts that make that belief reasonable.

Contrary to defendants' contention, although the retainer agreements do indeed establish defendants' lawyer-client relationship with the LLCs, they do not preclude the existence of a lawyer-client relationship with the individual plaintiffs as well, through conduct and plaintiffs' reasonable expectations. *See Lahn*, 276 Or App at 477 (a lawyer-client relationship may arise through conduct in performing services that are traditionally performed by lawyers or through the intentions of the putative client). Plaintiffs' affidavits present a genuine issue of fact as to whether plaintiffs reasonably understood that defendants were advising them personally: Defendants had represented the individual plaintiffs previously, on multiple occasions, on personal matters. At the meeting of September 25, defendants advised the individual plaintiffs concerning their personal finances by advising Alan not to restructure his investments interest in the LLCs before filing for Chapter 11 bankruptcy. It is true, as defendants contend, that during plaintiffs' conversations with defendants beginning in September, the focus had been on the fate of the LLCs. But defendants were aware that Alan was the only person in control of the LLCs and, through his revocable trust, the sole owner of Stonebridge, and the primary owner of Cambridge. *See In Re Brownstein*, 288 Or 83, 87, 602 P2d 655 (1979) (When a small, closely held corporation is involved, and in the absence of a clear understanding with the corporate owners that the attorney represents solely the corporation and not the individual interests, "[i]n actuality, the attorney *** represents the corporate owners in their individual capacities as well as the corporation unless other arrangements are clearly made."). That is evidence of "objective facts" that support plaintiffs' subjective belief that defendants were representing them personally in the matter relating to the LLCs. Plaintiffs are

correct in their first assignment of error that the evidence in the record on summary judgment creates a genuine issue of material fact that precludes summary judgment for defendants on the ground that defendants did not represent the individual plaintiffs.

Those same facts also require the conclusion that there was a genuine issue of material fact that precludes summary judgment on plaintiffs' motion for partial summary judgment. Although the evidence is undisputed that, at the meeting of September 25, defendants advised them on the narrow question regarding whether to restructure their investment interest in the LLCs before filing a Chapter 11 bankruptcy,[8] there is also evidence that the focus of the entire engagement was the impending bankruptcy of the LLCs and the effect of the appointment of the receiver on the LLCs. The retainer agreement concerned only the LLCs and the correspondence and telephone conversations related to the LLCs. We conclude that that evidence gives rise to a genuine issue of fact as to whether defendants' advice was intended for plaintiffs individually, and therefore precludes summary judgment for plaintiffs on that issue.

In summary, the trial court erred in granting summary judgment to defendants on the ground that the individual plaintiffs were not defendants' clients and on the ground that damages alleged to have arisen as a result of that appointment of the receiver were not reasonably foreseeable. However, the trial court did not err in denying the individual plaintiffs' motion for partial summary judgment.

Reversed and remanded.

---

[8] Defendants assert on appeal that plaintiffs have not alleged how that advice caused them damages, but defendants did not make that argument below and, in any event, we question how it would be relevant to the question whether the individual plaintiffs were clients.